UNITED STATES of America,
Plaintiff, Appellee,

v.

PROFESSIONAL AIR TRAFFIC CON-
TROLLERS ORGANIZATION (PAT-
CO), PATCO LOCAL 202 et al., Defend-
ants, Appellees,

Robert Belanger, President,
Defendant, Appellant.

No. 81–1800.

United States Court of Appeals,
First Circuit.

Argued Feb. 8, 1982.

Decided May 13, 1982.

Paul McEachern, Portsmouth, N. H., with whom Shaines, Madrigan & McEachern Professional Association, Portsmouth, N. H., was on brief, for appellant Robert Belanger.

W. Stephen Thayer, III, U. S. Atty., with whom Robert J. Lynn, Asst. U. S. Atty., Concord, N. H., was on brief, for appellee.

Before ALDRICH and CAMPBELL, Circuit Judges, TORRUELLA,* District Judge.

TORRUELLA, District Judge.

This appeal questions the validity of a finding of ostensibly civil contempt made against appellant Robert Belanger (Belanger) for violating a Preliminary Injunction Order issued by the United States District Court for the District of New Hampshire on October 23, 1981. Belanger is President of Local 202 of the Professional Air Traffic Controllers Organization (PATCO), headquartered in Nashua, New Hampshire. On August 3, 1981 a nationwide strike was authorized by PATCO against the Federal Aviation Administration's (FAA) air traffic control activities, which was joined in by Local 202. The District Court, at the request of the appellee, issued a temporary restraining order prohibiting certain strike-related activities at the FAA's facilities in Nashua. After a preliminary injunction hearing, of which appellant was notified but failed to appear, the District Court issued an order restraining appellant:

"Specifically, from having at any given time more than 30 pickets for informational purposes at or near the entrance to the FAA Air Route Traffic Control Center in Nashua, New Hampshire, and having any such pickets any closer to the entrance/exit gates of said Air Route Traffic Control Center than a distance of 40 feet therefrom and from in any way

threatening or attempting to threaten any employees of FAA or lawful visitors therein or employees of any other group who have lawful business upon the premises of said Air Traffic Control Center from either entrance or exit to said premises."

Appellant was personally served with a copy of the preliminary injunction order on the day it issued.

On September 7, 1981 the first of several incidents took place which led to appellant's contempt citation. On that day a crowd of two to three hundred persons gathered at the entrance to the Center, at about the time of the 2:30 P.M. shift change. Belanger was present and mingled with the crowd, which undisputedly contained more than 30 PATCO members, although less than that number exhibited picket signs at any one time. As working FAA employees appeared on the scene the crowd responded with various strike-related epithets and interfered with exiting vehicles.

On September 19th a similar incident took place, this time with a crowd numbering about 100 persons, 74 of which were identified as known PATCO members. Appellant mingled with the crowd and led sporadic strike-related cheering through a megaphone. Insulting language again emanated from the crowd against those FAA employees who chose to cross the PATCO picket line.

Finally, appellant was present at the Center's entrance on October 4, 1981. On this occasion he and a group of 20 to 25 PATCO members patrolled back and forth within 5 to 7 feet of the Center's gate. Just before he engaged in such action, appellant was warned by a Nashua police officer that such action could lead to his arrest for violation of the injunction. Belanger replied that the police officer should "do what you want to do [and] I will do what I have to do", and proceeded to act as previously described.

Next day, similar actions were engaged in by two other PATCO members, James Vacca and George Jones, who were subsequently

* Of the District of Puerto Rico, sitting by designation.

quently arrested, charged and indicted for criminal contempt. Both indictments were later dismissed without prejudice.

Appellee petitioned the District Court to hold appellant in contempt of the preliminary injunction order for his conduct of October 4. Following a hearing on October 23, 1981, appellant was found in civil contempt and a fine of $5,000 was imposed upon him, which was stayed pending disposition of this appeal.

■ Appellant's first contention challenges the validity of the injunctive order, claiming that it contravenes the "void for 'vagueness'" doctrine [1] and Rule 65(d) of the Rules of Civil Procedure [2] "because it fails to delineate the vague contours of the term 'picket.'" The "void for vagueness" doctrine is a procedural due process concept which requires the giving of appropriate notice of a proscription before a person can be held accountable for its violation. Thus, a government regulation can neither forbid nor require "the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application ..." *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). Rule 65(d) embodies this concept. *Schmidt v. Lessard*, 414 U.S. 473, 476, 94 S.Ct. 713, 715, 38 L.Ed.2d 661 (1974). See also *International Longshoremen's Assoc., Local 1291 v. Philadelphia Marine Trade Assoc.*, 389 U.S. 64, 76, 88 S.Ct. 201, 208, 19 L.Ed.2d 236 (1967).

■ According to the authorities relied upon by appellant, picketing refers to many different activities,[3] and need not involve walking[4] or the carrying of a sign by the picket.[5] Picketers can merely stand and observe workers without doing anything more, or they can actively communicate information to other persons, if said actions are for the purpose of inducing them to engage in concerted activity against the employer. If communication is involved it can be oral, in writing or by actions. Picketing may take place singly or in groups and may be carried out peacefully, by the use of threats and/or with actual violence.[6]

Appellant has appropriately indicated that all of these activities fall within what is commonly understood to mean "picketing." From this appellant concludes that the term "picket" is vague. But the previous listing, far from making the term "picket" vague, accurately describes the kinds of actions that are normally considered as included within the terminology in question and thus makes any such activity "picketing." Neither due process nor Rule 65(d) require that an order list the components of a term whose boundaries are understood by common parlance. This is particularly unnecessary in this case, when we consider the persons to whom the order is directed. Cf. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, —— U.S. ——, —— at n.7, 102 S.Ct. 1186, 1191 at n.7, 71 L.Ed.2d 362 (1982). Disclaimer by appellant of knowledge as to the meaning of the term "picket" strikes more of legalistic afterthought than of vagueness and ambiguity.

According to appellant's own definition, if nothing else, the term "picket" clearly includes patrolling in front of the entrance to an employer's premises for the purpose of influencing the employees' conduct vis-a-

---

1. Cf. *Zwickler v. Koota*, 389 U.S. 241, 249, 88 S.Ct. 391, 396, 19 L.Ed.2d 444 (1967).

2. Rule 65(d) provides in its pertinent part that: "Every order granting an injunction ... shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained ..."

3. *Note, First Amendment Analysis of Peaceful Picketing*, 28 Me.L.Rev. 203, 204 (1976) cited in appellant's brief, p. 10.

4. *N.L.R.B. v. Local 182, International Bro. of Teamsters*, 314 F.2d 53, 57–58, (2nd Cir. 1963).

5. See *N.L.R.B. v. Local 825*, 659 F.2d 379, 387 (3rd Cir., 1981); *Roywood Corp. v. Radio Broadcast Technicians*, 290 F.Supp. 1008, 1021 (S.D.Ala., 1968).

6. See generally Hellersten, *Picketing Legislation and the Courts*, 10 No.Car.L.Rev. 158, 186–87, n.135 (1931), cited in appellant's brief, p. 11.

vis an on going labor dispute. *K & K Constr. Co. Inc. v. N.L.R.B.*, 592 F.2d 1228, 1234 (3rd Cir., 1979). Appellant, presumably a "man of common intelligence", should have known this when he patrolled within a few feet of the gate on October 4, even without reliance on the warning by the police officer. Appellant's action in patrolling that gate at less than 40 feet was a clear violation of the District Court's order.

Appellant's second point on appeal brings into focus the distinction between civil and criminal contempt and the consequences resulting therefrom. Appellant contends that the District Court's action in imposing a $5,000 fine denotes a punitive purpose, which is impermissible in a civil proceeding. The distinction between civil and criminal contempt requires an inquiry into the purpose served by the contempt proceeding.

The purpose of a criminal contempt proceeding is the *vindication* of the court's authority by punishment through fine or imprisonment of the contemnor for his past conduct. *United States v. Mine Workers*, 330 U.S. 258, 302, 67 S.Ct. 677, 700, 91 L.Ed. 884 (1947); *G. & C. Merriam Co. v. Webster Dictionary Co., Inc.*, 639 F.2d 29, 40 (1st Cir., 1980). On the other hand, civil contempt proceedings are for the purpose of *coercing compliance* with the orders of the court *and/or to compensate complainant* for losses sustained by defendant's noncompliance. *United States v. Mine Workers*, 330 U.S. at 303–304, 67 S.Ct. at 701; *G. & C. Merriam Co. v. Webster Dictionary Co., Inc.*, 639 F.2d at 40–41. Coercion may be achieved by imprisonment of the contemnor until he purges himself of the contempt, and/or by a prospective, conditional fine. *Merriam, supra*, at 41, n.13. Where compensation is intended, a fine can also be imposed, payable to the complainant, but:

> "Such fine must of course be based upon evidence of complainant's actual loss, and his right, as a civil litigant, to the compensatory fine is dependent upon the outcome of the basic controversy."

*Mine Workers, supra*, 330 U.S. at 304, 67 S.Ct. at 701 (footnotes omitted).

The government, while consistently labeling the proceedings as civil, has not asserted that the present fine is compensatory for any proved loss, nor was that its position below. The Assistant U.S. Attorney argued that appellant "should not go unchallenged for what he has done in the past," and recommended a "substantial fine for his behavior in wilfully disobeying." Here it is argued that the fine's purpose was "to ensure future compliance with the order," and "to cure appellant's wilfull disobedience," neither, again, being compensatory.

Sanctions for civil contempt must be "wholly remedial," *Nye v. United States*, 313 U.S. 33, 42–43, 61 S.Ct. 810, 812–813, 85 L.Ed. 1172 (1941), quoting *McCrone v. United States*, 307 U.S. 61, 64, 59 S.Ct. 685, 686, 83 L.Ed. 1108 (1939). While "remedy" and "cure" are in one sense interchangeable, that is not the present context, even though a fine may, hopefully, have a "curative effect". A definite fine which is neither compensatory, nor conditioned on future violations of the court order is punitive and can be imposed only in criminal contempt proceedings. *Carbon Fuel Co. v. United Mine Workers*, 517 F.2d 1348 (4th Cir., 1975). The present fine was unconditional, and far from being wholly remedial, was wholly punitive; as a civil sanction, it fails entirely. *Id.; Flight Engineers Int'l Ass'n v. Eastern Air Lines, Inc.*, 301 F.2d 756 (5th Cir., 1962). There is no merit in the government's argument that this holding leaves individuals free to disregard court orders until such time as they are found in civil contempt and prospective sanctions are attached. Criminal proceedings remain available to punish contemnors for past violations.

If viewed as a criminal proceeding, the case was not properly conducted. In the first place, no notice describing the contempt as criminal was given. F.R.Cr.P. 42(b); *Flight Engineers Int'l Ass'n, supra; Cliett v. Hammonds*, 305 F.2d 565, 570 (5th Cir., 1962). Nor, in deciding, did the court apply a burden of proof beyond a reasonable doubt. *In Re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Finally, a

$5,000 fine on an individual is "serious," cf. *Muñiz v. Hoffman*, 422 U.S. 454, 95 S.Ct. 2178, 45 L.Ed.2d 319 (1975); *Bloom v. Illinois*, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968); and impermissible without a jury trial. *Douglass v. First Nat'l Realty Corp.*, 543 F.2d 894 (D.C.Cir., 1976); *Girard v. Goins*, 575 F.2d 160 (8th Cir. 1978). While we could perhaps cure this last by reduction of the fine to a nonserious level, because of the other improper procedures it must be vacated entirely. The bare finding of civil contempt may stand. Cf. *Cliett v. Hammonds, supra.*

*Remanded for proceedings consistent with this opinion.*

*No costs.*