Robert E. SCHNEIDER, Jr. et als., Plaintiffs,

v.

COLEGIO DE ABOGADOS DE PUERTO RICO et als., Defendants.

Civ. Nos. 82–1459, 82–1513, 82–1514 and 82–1532.

United States District Court, D. Puerto Rico.

June 24, 1983.

As Amended June 30, 1983.

See also 546 F.Supp. 1251; 1 Cir., 695 F.2d 17.

Robert Schneider, Jr., Santurce, P.R., pro se, and for Héctor Ramos Diaz.

Héctor L. Márquez, Hato Rey, P.R., for Jorge F. Romany, Jorge Souss Schidrewa and Oreste Ramos Díaz.

Miriam Naveira de Rodón, Santurce, P.R., José Julián Alvarez, University of Puerto Rico Law School, Río Piedras, P.R., Jay A. García Gregory, San Juan, P.R., for Justices.

Harry Anduze Montano, Santurce, P.R., for Colegio de Abogados and Fundación.

Eduardo Castillo Blanco, Pedro A. Del Valle Ferrer, Carmen S. Curet Salion, Federal Litigation Div., Dept. of Justice, San Juan, P.R., for Secretaries of Justice and Treasury.

*OPINION AND ORDER*

TORRUELLO, Chief Judge.

Defendant Colegio de Abogados de Puerto Rico (Colegio) has requested that we stay the judgment, 565 F.Supp. 963,[1] entered in this case on June 16, 1983. In this judgment we declared that certain sections of Laws No. 43 of May 14, 1932 (Law 43) (4 L.P.R.A. 771, *et seq.*), No. 99 of June 27,

---

1. More accurately, our "Declaratory Judgment, Permanent Injunction and Judgment of Damages."

1956 (Law 99) (4 L.P.R.A. 1001 *et seq.*), and No. 115 of May 16, 1941 (Law 115) (4 L.P. R.A. 785), are unconstitutional as interpreted, enforced and applied, and are violative of Plaintiffs' rights under the First and Fifth or Fourteenth Amendments of the Constitution of the United States and that said violations stated a cause of action within the purview of 42 U.S.C. 1983. The Court then enjoined enforcement of certain sections of said statutes by the Defendants,[2] and granted nominal damages to three of the Plaintiffs.

The Colegio's request raises four points in support of its position. These may be summarized as follows: (1) that the Colegio is likely to succeed on the merits of the appeal because the Court committed various errors of law; (2) that the "*status quo* should be preserved during the pendency of the appeal" to allow the Colegio to continue its "highly important public functions" and to prevent a jeopardizing of "the orderly administration of justice at the peril of litigants who are not even remotely connected to these actions"; (3) that the balance of the "overwhelming and immediate irreparable injury . . . [to the Colegio] . . . together with other public institutions," as opposed to the harm caused to Plaintiffs, favors the Colegio in equity; and (4) that the "public interest would not be harmed" by the stay because, in fact, there is a "compelling state interest which the [Colegio] protects by legislative and judicial mandate."

Defendant Colegio thus tailors its request for a stay pursuant to the standards generally accepted for the consideration of such a motion namely, (1) that the applicant make a strong showing that he is likely to succeed on the merits of the appeal, (2) that the applicant establish that unless a stay is granted he will suffer irreparable injury, (3) that no substantial harm will come to other interested parties, and (4) that a stay will not harm the public interest. See Wright and Miller, 11 *Federal Practice and Procedure: Civil* Sec. 2904 (text and cases at note 37). We shall examine Defendant

Colegio's contentions applying this litmus test.

We commence this endeavor by taking notice of what defendant Colegio fails to challenge in any fashion. Interestingly enough, although the Colegio claims several reversible errors in three areas of the *law,* there is "deafening silence" regarding the overwhelming litany of ideological and/or political activities which the Court found to have been carried out, by the Colegio. And in retrospect, the Colegio has probably acted wisely. At this late date it can hardly deny its own documents and admissions, or for that matter, what is practically the subject-matter of judicial notice in Puerto Rico by reason of its notoriety. It is difficult to consider a motion to stay in this case without weighing the pervasiveness of the ideological and/or political activities in which the Colegio has engaged, and continues to engage. We would not, of course, question this viewpoint were it not for the fact that, in so acting, the Colegio expects to use the coercive powers and facilities of the State to force citizens who do not agree with such ideological and/or political activities to support the same.

We thus pass to consider the Colegio's claimed errors of law, the first of which is that the Court's opinion "disregards the First Amendment rights of the [Colegio] and the thousands of non-objecting lawyers who are members." As to the Colegio, this allegation is totally unsupported as nothing in our opinion or in the judgment issued in any way prevents the Colegio from continuing its ideological and political activities. The only limit placed is upon the use, for said purposes, of the funds of those members forced by law to belong to the Colegio or those funds raised by the use of state action. The funds raised by the Colegio through the *voluntary* payment of membership dues and the *voluntary* purchase of notarial and forensic stamps *from the Colegio,* may be used by the Colegio for its ideological and political activities. Lawyers may, of course, exercise their First Amendment rights in support of the Colegio's ideo-

2. Except the Justices of the Supreme Court of    Puerto Rico.

logical and political activities by *voluntarily* paying dues to the Colegio and by *voluntarily* purchasing and using forensic and notarial stamps from the Colegio. Although we do not believe that our opinion or judgment was contrary to the above, the same shall be amended to reflect this clarification.

Two other errors of law claimed by the Colegio are interrelated: that our holding "fails to balance the competing interests (of the Plaintiffs and the Colegio), and that it misreads and misapplies the holding of *Abood v. Detroit Bd. of Educ.,* 431 U.S. 209 [97 S.Ct. 1782, 52 L.Ed.2d 261] (1977)." We have little to add on these issues that has not already been adequately covered in our Memorandum Opinion. However, the Colegio makes much ado about Plaintiffs' First Amendment rights not being absolute, a statement which is by now a constitutional truism.[3] Of course, the Colegio fails to apply this same maxim to its own First Amendment allegations. In balancing the Colegio's rights with those of Plaintiffs, the Colegio has failed to show why it needs to force Plaintiffs to pay dues and buy forensic and notarial stamps in order to carry out its ideological and political activities. The Colegio has failed to show what compelling state interest is satisfied by the compulsory subsidization of its ideological activities. We question, of course, who it is that "misreads and misapplies" *Abood.*

The Colegio next contends, in the same breath, that the injunction is "both not specific in terms and overbroad." The overbreadth contention refers to the alleged violation of the rights of the consenting members who, it is claimed by Colegio, are prevented by the injunction from continuing their support of Colegio's ideological and political activities. We have previously covered this subject matter and need not here repeat our action in clarification of this alleged issue. The Colegio, in support of its contention of lack of specificity as to what constitutes "ideological and/or political activism," cites from the Court's opinion, out of context, and claims that it will be unable to comply with the injunction because it

does not know what constitutes "ideological and/or political activism". The Colegio claims that these concepts are "not defined by the Court," are "too vague to provide defendants in this case proper notice of the conduct being prohibited", and thus contravene Rule 65(d).

It is clear that a government regulation can neither forbid nor require "the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application..." *Connally v. General Construction Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). Rule 65(d) embodies this concept. *Schmidt v. Lessard,* 414 U.S. 473, 476, 94 S.Ct. 713, 715, 38 L.Ed.2d 661 (1974). See also *International Longshoremen's Assoc., Local 1291 v. Philadelphia Marine Trade Assoc.,* 389 U.S. 64, 76, 88 S.Ct. 201, 208, 19 L.Ed.2d 236 (1967). Acceptance of this concept, however, is a far reach from Colegio's position in the present matter. The Court of Appeals for the First Circuit decided a case which is closely in point, *United States v. Professional Air Traffic Controllers Organization,* 678 F.2d 1 (CA 1, 1982). In that case an order directed certain strikers to refrain from "picketing" within certain distance from a gate. A violation of the order was charged and the union respondents raised the vagueness argument in defense. The Court stated:

"... Neither due process nor Rule 65(d) require that an order list the components of a term whose boundaries are understood by common practice. This is particularly unnecessary in this case, when we consider the persons to whom the order is directed. Cf. *Village of Hoffman Estate v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 495 at n. 7, 102 S.Ct. 1186, 1191 at n. 7, 71 L.Ed.2d 362 (1982). Disclaimer by appellant of knowledge as to the meaning of the term 'picket' strikes more of legalistic afterthought than of vagueness and ambiguity." (678 F.2d at p. 3)

The use of the terms "ideological" and "political" are neither nor recent invention (see footnote 5a of our Memorandum Opin-

---

**3.** See *Gitlow v. New York,* 268 U.S. 652, 666, 45 S.Ct. 625, 629, 69 L.Ed. 1138 (1925).

ion) nor unknown in the legal field. See *Abood v. Detroit Board of Ed., supra; Arrow v. Dow,* 636 F.2d 287 (CA 10, 1980) on remand 544 F.Supp. 458 (D.N.M., 1982); *Galda v. Bloustein,* 686 F.2d 159 (CA 3, 1982). We must assume that at this stage of the game the Colegio is at least "vaguely" familiar with these cases. Particularly when we consider the persons to whom the order is directed, disclaimer by the Colegio regarding the meaning of the term "ideological and/or political activism" strikes more of legalistic afterthought than of vagueness and ambiguity.

The Colegio next proceeds to rehash its arguments regarding comity and abstention. We, of course, are not at this stage going to reconsider our holding on these issues. See *Schneider v. Colegio de Abogados de Puerto Rico,* 546 F.Supp. 1251 (D.P.R.1982). We can only direct the Colegio to the decision of the Court of Appeals in this case, in the hopes that a reading of said opinion will refresh its views on these subjects:

> "The facts that the stamp claims were only mentioned in dicta in the previous disciplinary suits before the Commonwealth Supreme Court, and that some of the plaintiffs here did not participate in those suits, disposes of the Justices' claims based on *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 [44 S.Ct. 149, 68 L.Ed. 362] ... (1923) (forbidding federal district courts from asserting appellate jurisdiction over state court judgments). The Justices also argue that abstention is proper under *Younger v. Harris,* 401 U.S. 37 [91 S.Ct. 746, 27 L.Ed.2d 669] ... (1971), but there is no current Commonwealth proceeding involving the stamp statutes to which the district court can defer. Finally, the Justices argued at length that the membership and dues claims were outside the subject matter jurisdiction of the district court because they did not present substantial federal questions (citations omitted), but they have raised no similar argument about the stamp claims, perhaps wisely." (See *In re Justices of Supreme Court of Puerto Rico,* 695 F.2d 17, 26 (CA 1, 1982)).

Of course, Colegio is in an even more tenuous position to argue these points than were the Justices. Since the Court of Appeals' decision, the Supreme Court of the United States has decided *District of Columbia Court of Appeals v. Feldman,* —— U.S. ——, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). That decision, contrary to the miotic view presented by the Colegio, confirms our decision to the effect that all Plaintiffs' prospective challenges to the various statutes here in question, are properly before this Court. *Id.* at —— – ——, 103 S.Ct. at 1315–1316, 1317.

The Colegio's insistence on alleging that the funds collected through the sale of Colegio stamps constitute a "tax" which may not be enjoined because of the proscriptions contained in the Butler Act, 48 U.S.C. 872, is self-defeating and spurious. It not only is contrary to the previous holding of the Court of Appeals in this case (See *In re Justices of Supreme Court of Puerto Rico, supra,* at 26–27), but in fact runs afoul of the position taken by co-defendants, Secretary of Justice and Secretary of the Treasury of the Commonwealth of Puerto Rico, the public officials who have standing to make such a challenge. They have conceded in their Post Trial Brief, that the use of funds from the sale of those stamps and the use of public facilities for those sales "constitutes a violation of ... [the] individual's freedom of speech", if the funds are used for ideological purposes which are contrary to the individual's beliefs. (See page 3 of the Memorandum of Law filed April 29, 1983). They no longer raise the Butler Act as a defense to this Court's jurisdiction.

Colegio's last contention is a two-pronged attack based on an allegation of irreparable harm to it and to the "public" if a stay is not granted, versus practically no harm to Plaintiffs. The Colegio supports its contention with the affidavit of Mr. Negrón García, and the testimony of Mr. Patricio Martinez, the executive director of the Colegio, who in substance confirmed the information contained in Negrón García's affidavit. The Colegio, at the trial, had a full

opportunity to present evidence on this subject but failed to do so. The evidence that we heard from the Colegio's own auditor was in fact to the effect that the Colegio's accounting system does not permit a segregation of funds apportioned for ideological and nonideological activities.

There are, however, several matters which can be discerned from the affidavit and the testimony of Mr. Martinez. Although they seem to indicate that "the administration of justice" will grind to a sudden halt in Puerto Rico if a stay is not granted, an analysis of the allegations in the affidavit as well as the testimony presented does not bear this out. To begin with, as we have previously indicated, there is no impediment upon those who wish to voluntarily continue to pay dues and buy the Colegio stamps from the Colegio to continue to do so. Since Colegio claims that "the majority of the Colegio's members" are in support of its ideological and political activities, there is no reason to believe that this alleged majority will fail to provide ample funds for the Colegio. Of course, the Colegio is not in any way obliged to provide *any* services to those persons who do not contribute financially to its operations, and this applies equally to whether the subject matter is life insurance or the Supreme Court advance sheets. We should also keep in mind that there are alternative commercial and official sources in Puerto Rico from which the Puerto Rico Supreme Court decisions may be received. Colegio's claim that "work on legislation will come to a stop," overlooks the fact that such actions by the Colegio constitute classical "political" activity, and assumes that the Legislature of Puerto Rico will not be able to function without the Colegio's lobbying activities, a contention which we regard as farfetched. Lastly we have the Colegio's allegation to the effect that "the investigation and determination of complaints against lawyers will be halted". The only complaints against lawyers that the Colegio has processed in recent memory have been by reason of members' non-payment of Colegio dues. In fact, the agency that exercises the investigative and prosecutorial functions on a day-to-day basis is the office of the Solicitor General of Puerto Rico, whose functions and duties will undoubtedly continue unaffected by the outcome of this proceeding. Colegio's allegations regarding alleged interference with its legal education courses are equally unfounded, in that the Colegio charges a fee from those who participate in these courses. There is no reason why the full cost of these courses cannot be charged from the participants.

We next consider Colegio's juxtaposition, in terms of damages, versus Plaintiffs'. To begin with we consider Colegio's argument to be, at least in part, an equitable argument requiring the application of classical principles of equity. We are well aware that two of the most basic tenets of equity are not only that he who seeks equity must himself do equity, but that he must come before the Lord Chancellor with clean hands. The Colegio fares badly on either score. Its sad record need not be recounted herein. But again Colegio's argument vis-a-vis the granting of mere nominal damages to Plaintiffs is self-defeating. It is precisely because of the nature of these damages, their difficulty of assessment, that Plaintiffs suffer *irreparable* harm which *cannot be compensated at law,* and which requires the use of the Court's equitable powers. It would be the height of injustice if Colegio were to use the inequity which it is causing Plaintiffs as a sword against them. Lastly, the deprivation of Plaintiffs' right to practice their chosen profession without their suffering as a penalty the forbearance of rights guaranteed to them by the Constitution of the United States, deserves somewhat more weight in the scales of justice than Colegio's cavalier treatment is willing to accord.

Colegio's parting shot invokes "harm to the public interest". In its view only the granting of a stay will permit it "to continue to fulfill the roles that the legislature and the Supreme Court of Puerto Rico have assigned to it". Of course, the Legislature has never, in any of the statutes in question, assigned to the Colegio ideological or political role. That is why *on their face,*

these statutes are constitutional. If the Colegio wishes to engage in such activities, as we have said, it is free to do so. But it cannot do so with Plaintiffs' money. If it wants the full benefits and powers granted to it by the Legislature, such as mandatory membership and the proceeds of dues and stamps, Colegio holds the "keys to the kingdom".

There is an insinuation that third parties might be affected by the failure to use Colegio stamps in pleadings and in notarial documents. This of course seems to overlook the fact that there is at this time a valid, outstanding declaration of unconstitutionality as to those requirements, on which all persons may place reliance. To our knowledge, the Courts of Puerto Rico and other affected agencies are giving full faith and credit to the orders of this Court. There is no reason to believe that this situation will not continue, nor has any evidence to the contrary been presented. It is thus difficult to perceive how the rights of these alleged third-parties will be affected. In fact, since the order has already been implemented by the concerned agencies, a stay of this order at this time could only bring about confusion. We note in this respect that none of the other defendants in this case, including those directly concerned with the administration of justice, have sought a stay of the Court's Judgment pending appeal.

In final analysis we conclude that Colegio's likelihood of success on appeal are less than probable (*Conservation Law Foundation v. Andrus,* 617 F.2d 296 (CA 1, 1979); *Cintrón-Garcia v. Romero Barceló,* 671 F.2d 1 (CA 1, 1982), that maintaining the *status quo* would be tantamount to granting Colegio a license to continue its ideological and political activities with Plaintiffs' financial support, that Colegio lacks clean hands to seek equity, that it is Plaintiffs who are suffering irreparable damage to their constitutionally protected rights and not the Colegio, that the public interest will not be harmed, and that there is no compelling state interest in continuing to force Plaintiffs to support the Colegio's ideological and political activism.

Colegio's Motion to Stay Judgment is therefore DENIED. The Court shall issue an amended judgment clarifying the matters herein indicated.

IT IS SO ORDERED.