Evangelos LILLIOS

v.

**JUSTICES OF the NEW HAMPSHIRE DISTRICT COURT;** New Hampshire Superior Court; New Hampshire Supreme Court; Robert K. Turner, Director of Motor Vehicles.

**Civ. No. 89–460–D.**

United States District Court,
D. New Hampshire.

April 11, 1990.

Robert L. Hernandez, Malden, Mass., George J. Basbanes, Lowell, Mass., for plaintiff.

Douglas N. Jones, Asst. Atty. Gen., Concord, N.H., for defendants.

## ORDER

DEVINE, Chief Judge.

Plaintiff Evangelos Lillios brings this action against the justices of the New Hampshire state courts and the Director of the New Hampshire Department of Motor Vehicles seeking injunctive and declaratory relief. The action is premised on 42 U.S.C. § 1983; jurisdiction is authorized by 28 U.S.C. § 1343. Presently before the Court is defendants' motion to dismiss the complaint for failure to state a claim upon which relief can be granted. Rule 12(b)(6), Fed.R.Civ.P.

## Background

On five occasions between April 26, 1985, and March 8, 1989, Evangelos Lillios was convicted of speeding. *See* New Hampshire Revised Statutes Annotated ("RSA") ch. 265:60. Although Lillios requested a jury trial in each action, his requests were denied. Complaint ¶ 7. After each conviction, Mr. Lillios was fined and his license was suspended by the presiding judge under RSA 263:57.[1] *Id.* at ¶ 8.

Lillios seeks (1) a court order declaring RSA 263:57 unconstitutional, (2) an injunction prohibiting the Justices of the New Hampshire state courts from imposing speeding convictions without jury trials and from suspending drivers' licenses under RSA 263:57, (3) an injunction prohibiting the Director of the New Hampshire Division of Motor Vehicles from declaring plaintiff a habitual offender "based on his past unconstitutional motor vehicle convictions," and (4) a court order declaring plaintiff's five past convictions unconstitutional and void. Complaint at 7–8, Demand for Relief.

## Discussion

In reviewing a Rule 12 motion to dismiss, the Court must take the allegations of the complaint as true and may order dismissal only if the plaintiff is not entitled to relief under any set of facts he could prove. *Conway v. King,* 718 F.Supp. 1059, 1060 (D.N.H.1989) (citing *Knight v. Mills,* 836 F.2d 659, 664 (1st Cir.1987)). The issue before the Court is not whether the plaintiff will ultimately prevail, but is whether he is entitled to offer evidence to support his claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

To maintain a claim under 42 U.S.C. § 1983, plaintiff's complaint must allege (1) that the conduct complained of was engaged in under color of state law, and (2) that such conduct subjected the plaintiff to the deprivation of rights secured by the federal Constitution and laws. *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980); *Gutierrez-Rodriguez v. Cartagena,* 882 F.2d 553, 559 (1989). It is uncontested that Lillios's claims are based on state action. At issue is whether his Fourteenth Amendment due process rights were violated.

In their motion to dismiss, defendants propound numerous theories which they believe mandate dismissal of the complaint. One theory asserts that Mr. Lillios's state court convictions are res judicata and are entitled to full faith and credit in the federal courts under 28 U.S.C. § 1738.[2] Under res judicata, a final judgment on the merits of an action "precludes the parties ... from relitigating issues that were *or could have been* raised in that action." *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980) (citing *Cromwell v. County of Sac,* 94 U.S. 351, 24 L.Ed. 195 (1877) (emphasis added)). Defendants assert that since Mr. Lillios could have raised his constitutional claims as a defense in the state court proceedings, he is barred from raising them now.

■ The doctrine of res judicata can prevent a plaintiff from litigating claims which could have been raised in a previous action, even if those claims were never actually raised and litigated. *See, e.g., City of Canton, Ohio v. Maynard,* 766 F.2d 236, 238 (6th Cir.1985); *Vandenplas v. City of Muskego,* 753 F.2d 555, 559 (7th Cir.), *cert. denied,* 472 U.S. 1018, 105 S.Ct. 3481, 87 L.Ed.2d 616 (1985). That application, however, is not appropriate in the present case. In this circuit, a state criminal conviction precludes a subsequent section 1983 action only with respect to "matters actually litigated and decided at the prior trial."

---

1. That statute states:
**Suspension by Justice for Cause.** Any justice of a district or municipal court or of the superior court may suspend any license issued to any person, for a period not to exceed 7 days, after a conviction of a violation under the provisions of this title, after due hearing, for any cause which he may deem sufficient.

2. 28 U.S.C. § 1738 states in pertinent part: "The judicial proceedings of any court of any ... State ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State."

*Mastracchio v. Ricci*, 498 F.2d 1257, 1258 (1st Cir.1974).[3] *See also Fernandez v. Trias Monge*, 586 F.2d 848, 855 (1st Cir.1978) (court refused to give preclusive effect to substantive constitutional claims not actually litigated at the state criminal trial).

▪ Defendants also argue that Lillios had an opportunity to raise section 1983 claims arising out of his June 25, 1985, conviction in a civil action entitled *"Evangelos D. Lillios and John Alden Settle, Jr. v. Concord District Court*, Merrimack County Superior Court No. 85–E–583." In context of the instant motion, the Court cannot agree. To properly assess defendant's argument, the Court would need more information about the previous civil action than has been provided. *See, e.g., Mastracchio v. Ricci, supra*, 498 F.2d at 1261 (application of collateral estoppel requires examination of record in previous action). Evaluation of such information is not appropriate when deciding a Rule 12(b)(6) motion because a motion to dismiss is a question of limited inquiry. Here, only the viability of the claims set forth in the complaint are examined. Since defendants' res judicata arguments require the Court to take cognizance of matters not specified in the complaint, the arguments cannot be resolved in a motion to dismiss.

Defendants also ask that this Court abstain from hearing this action pursuant to the doctrine enunciated by the Supreme Court in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Where pending state criminal proceedings afford an adequate opportunity for litigation of the defendant's constitutional claims, federal intervention by way of injunctive or declaratory relief is unwarranted. *Id.* at 45–46, 91 S.Ct. at 751. Since no state criminal proceedings are pending against Mr. Lillios, *Younger* abstention does not apply.

## I. Constitutional Right to Jury Trial

▪ Defendants' most convincing contention is that none of the acts attributed to them constitute a deprivation of Lillios's constitutional rights. Lillios claims that his Fourteenth Amendment due process rights were violated when his request for a jury trial was denied in each of his trials for speeding. Although plaintiff's complaint is rather disorganized and confusing, the Court has been able to identify two separate arguments stated therein which might support Lillios's claim: (1) the due process clause of the Fourteenth Amendment requires a jury trial before a motorist's right to drive may be curtailed; and (2) the potential imposition of the license suspension penalty under RSA 263:57 makes speeding a "serious offense" to which the constitutional right to a jury trial attaches.

The right to drive is a protected liberty interest which under the Fourteenth Amendment cannot be denied or curtailed by a state without due process of law.[4] However, the manner in which the state provides such process as is due is not limited to any particular approach, and a jury trial is not essential. "Due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972).

Numerous courts have addressed the question of how much process is due before a state may revoke or suspend a driver's license.[5] In *Warner v. Trombetta*, 348 F.Supp. 1068, 1071 (M.D.Pa.1972), *aff'd*,

---

3. Some courts have held otherwise. For example, in *Jones v. Gann*, 703 F.2d 513 (11th Cir. 1983), the plaintiff filed a section 1983 action alleging that the defendants violated his civil rights in the enforcement of a city automobile ordinance. The court concluded that res judicata barred Jones from bringing the section 1983 action since he was raising the same issues which either were raised or *could have been raised* in the state court proceeding. *Id.* at 515–16.

4. *Bell v. Burson*, 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971), discussed this liberty interest in a context where continued possession of a driver's license was essential in the pursuit of a livelihood. The First Circuit has expanded the application of Fourteenth Amendment due process protection of the right to drive whether it is used "in pursuit of business or pleasure." *Raper v. Lucey*, 488 F.2d 748, 752 (1st Cir.1973).

5. *See generally* Annotation, *Sufficiency of Notice and Hearing Before Revocation or Suspension of Driver's License*, 60 A.L.R.Fed. 427 (1982).

410 U.S. 919, 93 S.Ct. 1392, 35 L.Ed.2d 583 (1973), the court concluded that "the essentials of due process require the opportunity for some sort of meaningful administrative hearing prior to the revocation of an operator's license." The hearing required by the due process clause "must be meaningful and appropriate to the nature of the case." *Bell, supra,* 402 U.S. at 541–42, 91 S.Ct. at 1590–91 (citations omitted).

In a case very similar to the one at bar, *Calabi v. Malloy,* 438 F.Supp. 1165, 1171 (D.Vt.1977), *amended,* 468 F.Supp. 76 (1978), the Vermont Commissioner of Motor Vehicles suspended plaintiff's license after she was convicted of speeding. The court found that the opportunity to contest the actual speeding offense in court provided the motorist with a hearing which was sufficient to meet due process standards.

In Lillios's case, the judges who suspended his license under RSA 263:57 did so only after he had been convicted of speeding in violation of RSA 265:60. On each occasion, Lillios was convicted following a bench trial before an impartial judge, during which he was confronted by his accusers and was allowed to present evidence and cross-examine witnesses. Notice and an opportunity to be heard are, of course, guaranteed by the Fourteenth Amendment, but there is no established right to a jury trial before suspension of a driver's license. Since Lillios received an impartial hearing before the suspension of his license, the denial of his request for a jury trial did not violate the Fourteenth Amendment.

■ Further, the Fourteenth Amendment does not require that a jury trial be provided in "petty" criminal cases where the defendant faces a penalty of less than six months' imprisonment or a fine of not more than $500. *Baldwin v. New York,* 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970). Lillios's speeding violations are categorized as "petty" since they did not subject him to any possibility of imprisonment, nor did he face imposition of a fine greater than $500. *See* RSA 651:2.

Lillios argues, however, that the "penalty of [a] fine *and suspension* of the constitutionally protected right to drive is so serious ... that it requires a jury trial prior to its imposition." Lillios Memo at 9–10 (emphasis in original). Lillios seems to be asserting that the possibility of license suspension under RSA 263:57 takes speeding out of the "petty" offense category and puts it into the "serious" offense category, thus requiring application of the Fourteenth Amendment jury trial guarantee. The Court is not convinced by this argument. Simply because a driver faces the possibility of both license suspension and a maximum fine of $500 does not entitle him to a jury trial.[6] Therefore, those portions of the complaint relating to alleged violations of Lillios's right to a jury trial must be dismissed.[7]

## II. *Constitutionality of RSA 263:57*

■ Lillios also seeks an order "declaring RSA 263:57 facially overbroad, vague, ambiguous, and therefore unconstitutional." A statute is overbroad if, in prohibiting activity properly within the scope of legislative authority, it impermissibly infringes constitutionally protected conduct. *Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). RSA 263:57 vests New Hampshire state court judges with broad authority to suspend drivers' licenses. Af-

---

**6.** The Fifth Circuit rejected a similar contention in the context of a driving while intoxicated (DWI) case. In *Landry v. Hoepfner,* 840 F.2d 1201, 1217 (5th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1540, 103 L.Ed.2d 844 (1989), the Fifth Circuit noted that where DWI is punishable by no more than six months, imprisonment and a maximum $500 fine, "several courts have held that license suspension does not suffice to take DWI out of the 'petty' offense category."

**7.** Plaintiff's claim that Part 1, Article 15, of the New Hampshire Constitution mandates a jury

trial also fails. The right to a jury trial under the New Hampshire Constitution does not extend to "petty criminal offenses," and the fact that a defendant's driver's license may be revoked does not itself trigger a jury trial right. *State v. Morrill,* 123 N.H. 707, 465 A.2d 882 (1983). Moreover, this Court is not empowered to enjoin state officials from engaging in conduct on the basis that it violates state law. *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 121, 104 S.Ct. 900, 919, 79 L.Ed.2d 67 (1984).

ter finding a driver guilty of violating the motor vehicle code, a New Hampshire judge may suspend the driver's license "for any cause which he may deem sufficient." Lillios argues that by giving state court judges unfettered discretion to suspend his license, RSA 263:57 necessarily infringes his constitutionally protected right to drive his car.

This argument misses the mark. Lillios's federally protected right to drive is not absolute; it must be exercised within the limits established by the state pursuant to its police power. That a state law implicates a constitutional right does not a fortiori make it unconstitutionally overbroad. A state law is overbroad if it "does not aim specifically at evils within the allowable area of [state] control, but ... sweeps within its ambit other activities that constitute an exercise" of federally protected rights. *Thornhill v. Alabama*, 310 U.S. 88, 97, 60 S.Ct. 736, 741, 84 L.Ed. 1093 (1940).

The State of New Hampshire has authority to regulate the conduct of motorists on its highways. Consistent with this authority, the New Hampshire Legislature passed RSA 263:57 to contend with drivers who may endanger others by violating traffic regulations. The license suspension provision of RSA 263:57 is aimed specifically at violators of New Hampshire's motor vehicle laws and is well within the "allowable area of state control." *Id.* Further, since the law does not impermissibly interfere with any other federally protected rights, the overbreadth doctrine does not apply.

The vagueness doctrine rests on principles of procedural due process and demands that a law be sufficiently clear and precise so that people are given fair notice and adequate warning of the law's reach. *United States v. Professional Air Traffic Controllers Organization*, 678 F.2d 1 (1st Cir.1982). The statute must define the offense in such a way that it provides explicit standards for those who apply the law, "rather than leaving to police or prosecutors or courts the task of defining it on an

ad hoc basis." *Levas and Levas v. Village of Antioch, Ill.*, 684 F.2d 446 (7th Cir.1982).

As a sentencing statute, RSA 263:57 does not forbid or require the doing of any act, nor does it define an offense. According to Lillios, the statute is invalid

> because it allows a judge to suspend any individual's right to drive for "any cause which he may deem sufficient." This language ... fails to notify the individual in advance as to which causes may be "sufficient," and also allows for unequal and standardless enforcement.

Lillios Memo at 8. The statute states clearly, however, that a judge may only suspend a license "after a conviction of an offense under the provisions of this title." RSA 263:57. It adequately warns drivers that they stand a chance of having their license suspended if they violate any of the motor vehicle regulations. Thus, the Court finds that the statute is not unconstitutionally vague, since it provides motorists with fair warning as to which activities may result in the suspension of their drivers' licenses.[8]

### III. Constitutional Challenges to Method of Prosecution and Habitual Offender Charge

The burden of demonstrating that no claim has been stated is upon the movant. *See* Rule 12(b)(6), Fed.R.Civ.P.; 2A J. Moore, J. Lucas & G. Grother, *Moore's Federal Practice* ¶ 12.07 [2.–5], at 12–63 (2d ed. 1989). A number of claims remaining in the complaint have not been *adequately* addressed by defendants' Motion to Dismiss, and thus those claims survive.

First, Mr. Lillios challenges two of his speeding convictions (April 26, 1985, and March 19, 1987), claiming that he was "denied his constitutional right to due process" when he was convicted despite the prosecution's failure "to put forth sufficient evidence." Defendants assert that this allegation fails to state a claim under 42 U.S.C. § 1983 because "[f]ederal courts are most emphatically unavailable to review state supreme court decisions on evidentiary suf-

---

8. The overbreadth and vagueness analyses are the same under the New Hampshire Constitu-

tion. *See State v. Wong*, 125 N.H. 610, 486 A.2d 262 (1984).

ficiency." Motion to Dismiss, at 9–10. Defendant cites no authority for this statement and makes no argument to support it. *See* Local Rule 11(c). Accordingly, this claim survives defendants' motion.

A second claim to survive defendants' motion to dismiss relates to Lillios's June 21, 1985, speeding trial. Lillios claims that the trial court's refusal to provide him with a copy of the tape recording of the proceedings violated his due process rights. Defendants assert "there is no due process right to a copy of a sound recording ... before filing an appeal for a criminal 'violation'." Motion to Dismiss at 10. Since defendants cite no authority for this proposition, Local Rule 11(c), this claim is not dismissed.

Third, Lillios alleges that he suffered a violation of his constitutional rights when, on April 26, 1985, the New Hampshire district court judge failed to record his trial. In New Hampshire, speeding is considered a violation, not a crime, and therefore a defendant is not entitled as a matter of right to a transcript. *State v. Komisarek*, 118 N.H. 524, 388 A.2d 1263 (1978). Defendants explain that the absence of a record of the April 26, 1985, hearing was "entirely the result of plaintiff's failure to follow procedures established by the court for obtaining such a record. RSA 599:1–C and district court Rules 1.18–1.19." Motion to Dismiss at 10. RSA 599:1–C places the burden on the person criminally charged to request that the district or municipal court keep a record of his trial in an effort "to minimize superior court appeals in violation cases." *State v. Penn*, 127 N.H. 351, 352, 499 A.2d 1014, 1016 (1985). Again, such an assertion from defendants, without more evidence, cannot result in dismissal.

Fourth, Lillios contends that in February 1983, after he surrendered his New Hampshire license to the Rhode Island Division of Motor Vehicles in exchange for a Rhode Island license, his New Hampshire license was revoked. Lillios contends that the rev-

ocation statute, RSA 263:56, is "unconstitutional as written" and that he was denied a "due hearing" prior to revocation. Complaint at ¶¶ 16–19. The Court finds these claims are moot since in 1983 Lillios no longer possessed a New Hampshire driver's license. Lillios further claims that he was convicted of a motor vehicle offense on September 11, 1985, "despite the fact that the prosecution failed to put forth sufficient evidence to convict." Complaint ¶ 20. Defendants contend that this claim is time barred by the general six-year statute of limitations which then applied to New Hampshire personal injury actions. RSA 508:4.[9] Since this section 1983 action was commenced in September 1989, plaintiff's claim based on his September 1985 conviction is not time barred. Thus, this claim also survives the motion to dismiss.

Finally, Mr. Lillios claims that his potential conviction as a habitual offender, *see* RSA 262:19, "on the basis of his past and outstanding unconstitutional motor vehicle convictions and sentences would clearly violate [his] ... constitutional rights." Complaint ¶ 26. Mr. Lillios does not seem to be attacking the constitutionality of New Hampshire's habitual offender law itself. Rather, he claims that its application based upon allegedly improper convictions violate his due process rights. Defendants have not persuaded the Court that there were no constitutional violations in the prosecution of Mr. Lillios's motor vehicle offenses; thus, this claim cannot be dismissed.

### Conclusion

For the reasons stated hereinabove, defendants' motion to dismiss (document no. 5) is granted in part and denied in part. Specifically, the Court finds and rules as follows: (1) RSA 263:57 is not unconstitutionally vague, overbroad, or ambiguous; (2) plaintiff had no right to a jury trial under the circumstances presented; and (3)

9. Defendants alternatively argue that this section 1983 action should be characterized as a petition for new trial and thus be time barred by the three-year statute of limitations under RSA 526:4. The Court rejects this argument.

Claims under section 1983 are best characterized as personal injury actions for statute of limitations purposes. *Wilson v. Garcia*, 471 U.S. 261, 276, 105 S.Ct. 1938, 1947, 85 L.Ed.2d 254 (1985).

Count II of the complaint must be and herewith is dismissed.

SO ORDERED.