Plymouth District Court
No. 97-797

### THE STATE OF NEW HAMPSHIRE

v.

### SUSAN MEISSNER

December 16, 1999

*Philip T. McLaughlin*, attorney general (*N. William Delker*, attorney, on the brief and orally), for the State.

*Flood Professional Association*, of Manchester (*Scott W. Flood* on the brief and orally), for the defendant.

BRODERICK, J. The defendant, Susan Meissner, appeals a seven-day license suspension under RSA 263:57 (1993) (amended 1997) ordered following her speeding conviction in the Plymouth District Court (*Kent*, J.). Although the defendant raises several issues on appeal, we address only her argument that the trial court abused its discretion in suspending her license. We vacate the suspension and remand for resentencing.

The following facts were adduced at trial. On May 21, 1997, the defendant was stopped by a State trooper after his radar recorded her traveling seventy-eight miles per hour in a forty-five mile per hour zone on the Franconia Notch Parkway. The officer, however, only charged her with traveling seventy-eight miles per hour in a sixty-five mile per hour zone. The trial court found that the defendant had, in fact, traveled thirty-one miles per hour over the posted speed limit while passing another vehicle. Based on the defendant's testimony that she failed to notice any speed limit signs, the court found that she paid inadequate attention to the road. The court imposed a fine and suspended her license for seven days pursuant to RSA 263:57.

The defendant argues that the trial court abused its discretion in suspending her license because it did so without sufficient cause. The State asserts that RSA 263:57 provides the court broad discretion to suspend an operator's license when it finds a violation of the rules of the road.

RSA 263:57 provides:

> Any justice of a district or municipal court or of the superior court may suspend any license issued to any person, for a period not to exceed 30 days, after a conviction of an offense under the provisions of this title, after due hearing, for any cause which he may deem sufficient.

While the trial court has discretion to suspend a license under this statute, its discretion is not unlimited. *Cf. State v.*

*Landry*, 131 N.H. 65, 67, 550 A.2d 94, 95 (1988). Because we grant deference to the trial court's findings, however, the defendant must establish that its decision was "clearly untenable or unreasonable to the prejudice of [her] case." *State v. Voorhees*, 137 N.H. 650, 652, 632 A.2d 825, 826 (1993) (quotation omitted).

■ "The suspension or revocation of a driver's license is not intended as a punishment to the driver, but is designed solely for the protection of the public in the use of the highways." 7A AM. JUR. 2D *Automobiles and Highway Traffic* § 124 (1997); *cf. State v. Cassady*, 140 N.H. 46, 49, 662 A.2d 955, 958 (1995) ("The primary goal of the administrative license suspension process is to remove irresponsible drivers from the State's highways as quickly as possible to protect the public . . . ."). The legislature enacted RSA 263:57 "to contend with drivers who may endanger others by violating traffic regulations." *Lillios v. Justices of the New Hampshire Dist. Ct.*, 735 F. Supp. 43, 47 (D.N.H. 1990). Accordingly, an operator's license may not be suspended under the statute following a speeding conviction unless the operator created an immediate hazard to the operator or to the safety or property of others on or near the roadway, or had a record of prior driving offenses which would support a suspension for public safety. *See Opinion of the Justices*, 102 N.H. 183, 185, 152 A.2d 870, 871 (1959) (absent further legislative clarification, commissioner not authorized to suspend license for speeding under statute which authorizes license suspension for "operating improperly or so as to endanger the public").

We hold that the trial court erred in suspending the defendant's license because the record before us does not support a finding that the defendant's conduct presented an immediate hazard to herself or to the safety or property of others on the roadway. Although the defendant exceeded the posted speed limit by thirty-one miles per hour, the officer charged her with a lesser violation "out of fairness, because [he could] see the [sixty-five] mile an hour sign where they were stopped." The court entered a fine consistent with that charge. The evidence indicates that the speeding violation occurred on a clear, dry day around 1:30 p.m. There was no evidence that the defendant posed an immediate hazard to traffic, pedestrians, or others on or near the highway, and under the circumstances of this case, a hazard will not be presumed from the defendant's speed alone. If speeding, by itself, were always enough to justify a license suspension under RSA 263:57, then any violation of a posted or statutory limit, however inconsequential, would be sufficient to suspend an operator's license.

▇ In this case the trial court, apparently, did not rely on speed alone in ordering a license suspension. The record reflects the trial court's conclusion that the defendant created a hazard by (1) passing another vehicle while speeding, and (2) not paying attention. If the record supported both findings we would agree with the trial court. The defendant's admission, however, that she was not paying attention related to her failure to notice speed limit signs along the side of the highway. The record cannot be read to construe the defendant's statement as a general acknowledgement that she was not paying attention to the roadway or to other traffic. On the facts of this case, it would be unreasonable to conclude that the failure to see a roadside speed limit sign equated to inattentive driving of the sort necessary to create a hazard to others. That the defendant's statements did not justify a finding of general inattentiveness is supported by her unrefuted testimony at trial that when she asked the trooper at the scene whether she "was driving in any manner that could be construed as hazardous or dangerous," he responded, "No." Because the trial court's finding that the defendant failed to pay attention was clearly erroneous, we conclude that merely passing another vehicle while speeding is not, by itself, conduct that creates an immediate hazard to others. There must be evidence that the operator's conduct posed an immediate hazard to others or that a defendant's past driving record supports a limited suspension for the public safety.

While we do not endorse traveling above the posted or statutory speed limit, a speeding violation is generally addressed by a fine. When, however, an operator's license is suspended under RSA 263:57 following a speeding conviction, there must be evidence that the operator's conduct posed an immediate hazard to the operator or to the safety or property of others on or near the roadway, or that the operator had a history of driving offenses sufficient to raise concerns about public safety. Although in some circumstances speed, by itself, may be so excessive as to establish hazardous conduct justifying a license suspension under RSA 263:57, such circumstances do not exist in this case. The trial court made no finding that the defendant's speed posed any threat to or created any difficulties for the motorist she passed or others on or near the highway. There was no evidence that traffic, weather, visibility, or road conditions were unusual, dangerous, or posed any increased risk either to the defendant or to others as a consequence of the defendant's speed. Likewise, there was no evidence that the area where the speeding occurred was congested, heavily populated, or subject to pedestrian traffic.

This defendant could properly be fined for violating the speed limit. The trial court erred, however, in suspending her license because the record, reasonably interpreted, could not support a finding that the defendant's conduct created an immediate hazard.

*Sentence vacated;*
*remanded for resentencing.*

HORTON, J., with whom THAYER, J., joined, dissented; the others concurred.

HORTON, J., dissenting: I would hold that the trial court acted within its discretion to suspend the license in this case. Speed alone, under the circumstances of this case, allowed the trial court to find hazard.

THAYER, J., joins in the dissent.